ROBERT R. POWELL, ESQ. CSB#159747
DENNIS R. INGOLS, ESQ.   CSB#236458
LAW OFFICES OF ROBERT R. POWELL
925 West Hedding Street
San Jose, California 95126
T: 408-553-0200 F: 408-553-0203
E: rpowell@rrpassociates.com

Attorneys for Plaintiff
WALLY WETTER

FILED
2007 SEP -5  A 10:08
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHISN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

C07 04583

| | |
|---|---|
| WALLY WETTER,<br><br>       Plaintiff,<br><br>vs.<br><br>CITY OF NAPA, OFFICER<br>B. BANDY, OFFICER J. THOMPSON,<br>OFFICER A. ORTIZ, and<br>Does 1-10, inclusive<br><br>       Defendants. | Case Number:<br><br>COMPLAINT FOR VIOLATION OF<br>CIVIL RIGHTS<br><br>[DEMAND FOR JURY TRIAL] |

## I.

## JURISDICTION

1.  JURISDICTION. Plaintiff brings this lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by defendants, at all times acting under color of state law, of rights secured to Plaintiff under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, and state law where applicable.

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 1 of 12

2. Jurisdiction is conferred on this Court by 28 U.S.C. section 1343 (3) and 1343 (4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. 1983. Jurisdiction is also conferred by 28 U.S.C. 1331 (a) because claims for relief derive from the United States Constitution and the laws of the United States. Jurisdiction of this Court over any claim for Declaratory Relief is conferred by 28 U.S.C. Section 2201.

3. INTRA-DISTRICT ASSIGNMENT: Venue properly lies in the Northern District of California, San Francisco Division, pursuant to 28 U.S.C. Sections 1391 and 1392 and Local Rule 3-2(e), in that the events and circumstances herein alleged occurred in Napa County, and at least one defendant resides in Napa County.

## II

## PARTIES

4. PLAINTIFF WALLY WETTER (hereinafter "WETTER" or "PLAINTIFF") is an individual, who at all times relevant herein, was residing in Yountville, California.

5. Defendant CITY OF NAPA (hereinafter "CITY") is a municipality, organized and operating under the laws of the State of California, which has, operating within its jurisdiction, the NAPA POLICE DEPARTMENT (hereinafter "N.P.D.") which is a CITY governmental agency organized and existing pursuant to the law and policies of defendant CITY, for which CITY and/or N.P.D. promulgated, encouraged, administered, and/or permitted, the policies, practices and procedures under which the individual defendant employees committed the acts or omissions complained of herein, and determined the nature, scope, duration, and requirements of training of officers, and which either intentionally or negligently, whether as a result of policies, practices, or procedures, or as a result of ineffective, non-existent, or inadequate training and education of employees, caused or were

otherwise responsible for the acts or omissions of said employees as complained of herein. Plaintiff alleges that the policies, practices, and/or procedures of CITY, as determined and effected by the individual defendants and other police officers of N.P.D., constitute and/or engender a circumstance and/or environment of deliberate indifference to the rights and safety of citizens of the community. The entities are referred to interchangeably herein.

6. Defendant B. BANDY, Badge Number 141 (hereinafter "BANDY") is an individual, who at all times relevant herein, was a police officer employed by CITY.

7. Defendant J. THOMSON, (hereinafter "THOMSON") is an individual, who at all times relevant herein, was a police officer employed by CITY.

8. Defendant A. ORTIZ, Badge Number 145 (hereinafter "ORTIZ") is an individual, who at all times relevant herein, was a police officer employed by CITY.

9. PLAINTIFF is informed and believes and, based upon such information and belief, alleges that, at all times herein mentioned, each and every defendant was the agent and/or employee of their co-defendants, and was acting either in their individual capacity or in the scope, purpose and authority of CITY and/or N.P.D. and/or in their employment or agency with said entities, and with the knowledge, permission, ratification, and/or consent of said co-defendants and/or entities.

10. PLAINTIFF is informed and believes, and thereon alleges, that each of the named individual defendants herein, did knowingly and willingly, with a common intent and scheme set forth in further detail herein below, conspire to injure PLAINTIFF, and deprive PLAINTIFF of his rights, liberties, and interests, as such rights are afforded his under the United States Constitution, and the California State Constitution, and conspired generally to damage said PLAINTIFF and inflict great injury upon him, with the intent of causing, and so

causing, violations of his rights under the U.S. Constitution and/or California State Constitutions, and the infliction of severe emotional distress.

## III.

## FACTUAL ALLEGATIONS

11. WETTER is a 68-year-old semi-retired man who, prior to the events complained of herein, supplemented his retirement income with a part-time job at a Safeway store in Saint Helena. Prior to the events described herein, WETTER was in perfect physical health and had normal blood pressure.

12. On March 9, 2006, at approximately 9:45 p.m., WETTER was in bed reading a book to his five-year-old son when his doorbell rang. WETTER arose and answered the door. At the time, he was wearing a bathrobe and a pair of boxer shorts. He had no shoes of any kind on his feet.

13. At WETTER's door were three uniformed police officers. PLAINTIFF is informed and believes, and thereon alleges that they were defendants BANDY, THOMSON, and ORTIZ. WETTER asked why they were there and they responded that they were there for something related to WETTER's wife, and asked to enter WETTER's home.

14. When WETTER stepped aside to allow the officers in, they requested that he remove his dog, which was standing quietly in the doorway. The dog was not barking at the officers or acting menacing in any way, and was posing no threat to the officers at all. WETTER walked the dog into the garage and shut the door.

15. WETTER turned to see that he was surrounded by the three defendant officers. The three of them had formed a semi-circle around him and each officer was within approximately five feet of WETTER.

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 4 of 12

16. Puzzled, WETTER asked BANDY what the problem was. BANDY responded that WETTER's wife had alleged that WETTER had threatened to kill her, choked her for ten minutes and shoved her against a countertop, causing her to fracture her ribs.

17. WETTER denied these allegations and reminded BANDY that on January 2, 2006, BANDY and another officer had responded to a similar call by WETTER'S wife, and seeing no injury, they did not arrest WETTER. WETTER was issued a citation to appear in court thirty (30) days after the January incident, but no charges were ever filed.

18. On this occasion, however, BANDY told WETTER that WETTER had to go "downtown" with the officers. WETTER asked whether he needed an attorney. BANDY said "no." WETTER asked him, "Am I under arrest?" BANDY replied, "no."

19. Neither BANDY nor the other officers told WETTER that he was under arrest. Intending to comply with the officers' request that he accompany them "downtown" but not wanting to leave his five-year-old son home alone, WETTER said "let me get my son," and turned to walk towards his son who was watching this interaction from the other end of the hallway, and appeared shaken and scared by the presence of the three armed officers.

20. Suddenly, BANDY grabbed WETTER's left wrist and began to twist WETTER's arm behind his back. WETTER's shoulder was sore and he asked that BANDY stop twisting it. Rather than releasing the pressure, BANDY twisted WETTER's arm harder and threw him face-first onto the floor. WETTER injured his knee during this fall, leaving a scar to this day.

21. WETTER repeated his request that BANDY release his arm as his shoulder was hurting terribly. BANDY responded: "You're resisting arrest, you're resisting arrest" and, with the assistance of two other officers, knocked WETTER's head against the floor causing a

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 5 of 12

wound to form over WETTER's right eye. Up until shouting that WETTER was "resisting arrest," none of the officers had said a word about WETTER being placed under arrest.

22. Immobile and in pain, WETTER repeated his plea that BANDY release his arm and that he was not resisting arrest. At this point, WETTER's pain was so severe that he nearly lost consciousness. BANDY did not release WETTER's arm, and in response to WETTER's pleas, placed his full body weight on WETTER's shoulder. Meanwhile, the two other officers held down WETTER's legs and head.

23. The officers pulled WETTER off the floor, lifting him by his arms which were being held behind his back, handcuffed his hands behind his back and forcibly sat him down in a chair. Meanwhile, WETTER's son began to cry. He approached his father, trembling and sweating.

24. WETTER repeated his complaint that his shoulder was injured. Officer THOMSON or ORTIZ suggested that they move the handcuffs to WETTER's front to lessen the pain, and proceeded to move the handcuffs. Simultaneously, BANDY informed WETTER that he was taking WETTER's son to another room to talk to him.

25. WETTER expressly objected to his son's interrogation, stating: "you can't do that!" Nonetheless, BANDY led the child into a bedroom and proceeded to interrogate him. Shortly thereafter, BANDY emerged from the bedroom and told WETTER that "[WETTER's] son said he saw [WETTER] beat up [WETTER'S] wife."

26. WETTER responded that his son could not have seen him beat up his wife, because it did not happen. BANDY then accused WETTER of calling his own son a liar. Upon reading the subsequent police report, WETTER discovered that his son had not, in fact, claimed that he witnessed any violence against his mother.

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 6 of 12

27. BANDY repeated his command that WETTER accompany him downtown. WETTER, clothed only by a thin robe and underwear, asked what would happen to his son, and then requested to be allowed to put on pants and a jacket.

28. BANDY protested WETTER's need to put pants on. Upon WETTER's further insistence, and the agreement of one of the other officers, who went to the bedroom to get WETTER's pants, he was allowed to put on his pants, a light zippered shirt, and a pair of shoes without socks. Then, BANDY proceeded to place him in the squad car, telling WETTER he did not need a jacket despite WETTER's pleas to put on a jacket as it was snowing.

29. On the way to the squad car, WETTER repeated his concern about his son being left alone. BANDY assured WETTER that WETTER's wife was in a separate squad car and she would take care of the child. WETTER wondered how it was that his wife was sitting in a patrol car outside the house if she indeed had the fractured ribs the officers had claimed. Without a jacket, on this historically cold night, WETTER was placed in BANDY's squad car and taken to jail.

30. WETTER awaited his booking in a barn-like structure for approximately thirty minutes, sitting in a chair near the patrol car. It was snowing outside, and BANDY had not permitted him to bring a jacket despite the unusual cold, and WETTER's specific request.

31. While sitting in the chair, what appeared to be a deputy sheriff with American Canyon, a city nearby, came up and engaged BANDY in conversation. He asked BANDY what WETTER had been arrested for, and there was some conversation about WETTER's age and having "resisted arrest." The sheriff from American Canyon, then looked at WETTER

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 7 of 12

and said, "He doesn't look very beat up for a 68 year old guy." BANDY responded, "You can't beat'em up too bad."

32. Once in the booking room, the jail nurse came to examine WETTER. She informed the officers that his blood pressure was about 200 over 120, much higher than normal. She refused to allow WETTER to be taken to jail.

33. The booking officer insisted that the nurse take WETTER's blood pressure again. She did so three times, and obtained three identical results. She then informed BANDY that WETTER needed to be taken to the emergency room rather than jail.

34. BANDY drove WETTER to the Queen of the Valley emergency room where WETTER waited for an additional hour before receiving treatment. The hospital's blood pressure monitor was not functioning and WETTER was in excruciating shoulder pain. The nurse measured WETTER's blood pressure manually, and took numerous x-rays of WETTER's shoulder. The nurse determined that WETTER's blood pressure was high but that "he wasn't going to die from it," and gave him pain killers for his shoulder. A doctor on duty permitted BANDY to take WETTER back to jail.

35. Upon his return, WETTER was placed in a freezing-cold holding cell while the jail nurse telephoned the doctor at the hospital. She did not want to book WETTER, believing that his blood pressure was hazardously high.

36. Cold, WETTER asked a parka-clad officer for a coat. The officer returned with a sweatshirt which WETTER went through great pains to put on, then removed immediately because of its stench.

37. WETTER waited another thirty minutes. The nurse returned and gave him drugs to lower his blood pressure. The booking process was then completed.

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 8 of 12

38. WETTER was not allowed to make a phone call until 4:30 a.m. At that time, he was also informed that his bail was set at $85,000 and that he needed to call a bail-bondsman. WETTER's adult son from a previous marriage drove in from Sacramento and placed his and WETTER's houses up as collateral on the bond. WETTER was released at approximately 9:00a.m. the morning of March 10th, 2007.

39. The following week, WETTER visited his doctor. During this visit, WETTER's doctor found that WETTER had a torn rotator cuff in his shoulder and his blood pressure was abnormally high, attributing both to the incident of March 9th/10th, 2006.

40. WETTER was prescribed medication to control his blood pressure, which he continues to take to this day due to his blood pressure never returning to normal.

41. As a result of the unlawful arrest and excessive force administered by defendants, WETTER can no longer perform his former duties at Safeway, and can no longer engage in activities that he previously enjoyed such as playing golf, and all of the previous activities that he enjoyed to do with his son.

## IV.

## DAMAGES

42. As a result of the conduct of defendants, WETTER suffered severe physical pain and severe emotional distress, anxiety and general damage to his psyche, to such an extent as to cause physical manifestations of pain and symptoms of nausea and severe depression, including but not limited to sleeplessness, headaches, fatigue, malaise, irritability, inability to focus, and inability to perform the duties of his job which resulted in and continues to cause Plaitiff lost wages.

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 9 of 12

43.     WETTER suffered severe injury to his shoulder, and the bones, ligaments, cartilage and tendons therein. For a significant period of time after the incident complained of hereinabove, WETTER experienced a general malaise associated with his depressed emotional and psychological state, growing fear of further harassment and incarceration by the police, and loss of trust and respect for figures of authority such as the police in his community.

44.     WETTER has tremendous difficulty sleeping, and his injuries have prevented him from continuing with his regular exercise routine, golfing, playing catch with his son and other activities which he previously enjoyed. He has incurred medical expenses for his injuries, and is expected to incur medical expenses in the future, in an amount to be determined according to proof at time of trial. The incident also caused humiliation, embarrassment and loss of reputation in the community, as well as significant attorney's fees in defending himself in criminal court proceedings.

45.     PLAINTIFF seeks an award of exemplary (punitive) damages pursuant to federal law and California Civil Code Section 3294 to make an example of and punish defendants, and in the hope of deterring future conduct of a similar nature. Defendants are guilty of oppression, fraud, and/or malice by way of the acts heretofore alleged.

## V.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATION OF CIVIL RIGHTS (42 U.S.C. 1983 – EXCESSIVE FORCE)**

[PLAINTIFF Against Individual Defendants]

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 10 of 12

46. PLAINTIFF realleges and incorporates paragraphs 1 through 40, inclusive, as though fully set forth at this point, as they relate to a cause of action for a violation of PLAINTIFF civil rights under the 4th and 14th Amendments of the U.S. Constitution, with regard to the unlawful arrest and imprisonment of his person without due process of law, and alleges said arrest was without probable cause or an arrest warrant.

47. PLAINTIFF re-alleges the allegations of paragraph 41-43 at this point as said damages relate to a cause of action for a violation of his civil rights for the use of excessive force, as stated.

48. The punitive damage allegations of paragraph 44 apply in this cause of action to all defendants except CITY.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS (42 U.S.C. 1983 - ARREST)

[PLAINTIFF Against All Defendants]

49. PLAINTIFF realleges and incorporates paragraphs 1 through 40, inclusive, as though fully set forth at this point, as they relate to a cause of action for a violation of PLAINTIFF civil rights under the 4th and 14th Amendments of the U.S. Constitution, with regard to the unlawful arrest and imprisonment of his person without due process of law, and alleges said arrest was without probable cause or an arrest warrant.

50. PLAINTIFF realleges the allegations of paragraph 41-43 at this point as said damages relate to a cause of action for a violation of his civil rights for a warrantless arrest, as stated.

51. The punitive damage allegations of paragraph 44 apply in this cause of action to all defendants except CITY.

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 11 of 12

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF respectfully requests that this Court:

1.) Award to plaintiff general, special and compensatory damages in an amount to be proven at trial.

2.) Award to plaintiff punitive damages against all individually-named defendants, and each of them, for their extreme and outrageous conduct in complete disregard for the rights of the plaintiff;

3.) Award to plaintiff statutory damages and/or attorney fees against all defendants as allowed under 42 U.S.C. 1988 and any other provisions of law allowing for same.

4.) Grant plaintiff such other and further relief as the Court may deem just and proper.

Dated: August 31, 2007

*/s/ Robert R. Powell*
ROBERT R. POWELL, ESQ.
Attorney for Wally Wetter

**DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands a jury trial as provided by F.R.C.P. 38(a) of the Federal Rules of Civil Procedure.

Dated: August 31, 2007

*/s/ Robert R. Powell*
ROBERT R. POWELL, ESQ.
Attorney for Wally Wetter

Wetter v. City of Napa
U.S. Dist. Ct. – N. Cal.
Case No.

Page 12 of 12